## Case No. 8,911.

### McNAUGHTER v. CASSALLY.

[4 McLean. 530.] [1]

Circuit Court, D. Indiana. May Term, 1849.

CONTRACTS—NONCOMPLIANCE—WAIVER—ESTOPPEL
—MEASURE OF DAMAGES.

1. A contract to deliver three thousand hogs, cleaned. at such times as should be required by the purchaser, not exceeding seven hundred in a day, may be waived by receiving a less number, and giving notice. under the contract, to furnish at subsequent periods.

[Cited in brief in Reggins v. Missouri River, Ft. S. & G. R. Co., 73 Mo. 600.]

2. On the failure of the plaintiff to deliver, the defendant might have put an end to the contract, and refused to receive any more.

3. This having been waived by defendant. he can not afterwards, set it up as matter of justification or defense, for not complying with his contract.

4. After the defendant's agents refused to receive any more hogs, there being one or two wagon loads, at the door of the pork house, ready to be delivered, and a great number killed and cleaned. it was unnecessary to make a tender of the hogs.

5. If the jury are satisfied that the plaintiff had the hogs ready to be delivered, a refusal to receive any more, was sufficient to charge the defendant.

6. The damages will be, the difference between the contract price, and the market value of the pork, in Madison, the place of delivery.

[Cited in Dolph v. Troy Laundry Mach. Co., 28 Fed. 557.]

[This was an action by A. McNaughter against William Cassally for damages for breach of contract.]

Sullivan & Chapman, for plaintiff.
Marshall & Judah, for defendant.

OPINION OF THE COURT. This action is founded upon a contract of the following import, agreement dated 17th June, 1847—McNaughter sold to defendant and partner, three thousand corn fed hogs, to be delivered on or between the 15th of November and 1st of January, next, at the option of Cassally, at Madison, Indiana, they giving twelve days notice for the delivery of the same. and to pay for the same $4.62½ per hundred, net weight; said hogs to average 190 pounds net, and no one to weigh less than 140 pounds, at Madison, to be killed one day and weighed the next; payment to be made $4.900 in advance on security by plaintiff, etc. This contract was modified on the 8th of November, 1847, so as to make the delivery at Madison, soon as the weather is cold enough to pack seven hundred hogs per day, until the completion of the contract. Payments were

1 [Reported by Hon. John McLean, Circuit Justice.]

made by the defendant amounting to the sum of $15,640. Previous to the above modification of the contract, the defendant on the 2d of November. caused a notice to be delivered to the plaintiff as follows: "We want the three thousand hogs to be delivered to us on the 15th inst." On receiving this notice, the plaintiff informed the defendant that he would make his arrangements to furnish the hogs agreeable to contract—have them all killed in one day, and delivered the next. The plaintiff offered to prove that a large number of hogs were purchased, and forfeitures incurred by him by reason of the defendant's failure to take the number specified in the contract. But THE COURT refused to admit the evidence; that the contract of purchase by the plaintiff was not a matter to be proved. That the difference between the contract price with the defendant and the value of the hogs at the place of delivery were the facts to be proved, to show the damages sustained by the plaintiff.

In their charge to the jury, THE COURT said, it appears from the evidence, that the hogs delivered have been paid for under the contract. And the plaintiff claims damages for a violation of the contract in not receiving the whole number of three thousand, named in the contract. By the contract the hogs were to be delivered between the 15th of November and 1st of January ensuing. at the option of the defendant, he giving twelve days notice. This gave him the right to demand the delivery of the hogs in one day, and notice to this effect seems to have been given. But afterward, this notice was not insisted on, and the contract was so changed by the parties, as to require the delivery of seven hundred hogs per day, when the weather shall be cool enough. Schooley was engaged to cut and pack the pork, and he purchased the hams. He states that seven hundred hogs were required to be killed the 11th November. on Thursday. Mitchell and Payne, who acted for McNaughter in his absence, say that no such order was given, but that it was agreed that the hogs in the pens should be killed on the 11th, and delivered on the 13th.. On the 12th November there was an order for seven hundred to be slaughtered on that day. But this order was waived by Irwin, the agent of the defendant. Irwin denies that he gave such an order, and declares that he had no authority to give it. It seems the defendant said to Payne and Mitchell, he was not, himself, a practical man, but that Irwin was. who would give instructions. An order was given the 13th, Saturday, for seven hundred hogs. Six hundred and sixty-three were weighed. Schooley agreed to make up the deficiency. Some of the hogs were sent which were supposed to have been killed on that day. Another order was given on the 15th of November for seven hundred to be delivered the 16th; six hundred and nine-

ty-seven were weighed. On the 16th an order was given for two hundred hogs, to be delivered on the 17th; two hundred were weighed and delivered, but the defendant's agents, acting under his orders, refused to receive any more. At this time there were several wagons at Schooley's pork house, loaded with hogs, which were refused. At the same time, it appears, there were in McNaughter & Mitchell's slaughter house eight hundred hogs cleaned. There remained eleven hundred and forty-two hogs to be delivered to complete the three thousand. To recover damages for the refusal to receive these hogs this action has been brought.

This is, no doubt, a hard contract on the defendant. Pork could be purchased at less than he agreed to give. But the court can not change the contract. The defense mainly rests upon the failures to deliver the hogs, under the notices given, as the plaintiff was bound to. This would have been a good defense for breaking up the contract and refusing to receive any more hogs if it had not been waived by the defendant. From time to time orders were given, notwithstanding the previous failure to deliver the number required. Such orders, given from time to time, must be considered as waivers of the previous default, as it declared a willingness to go on with the contract, and the plaintiff was bound to make the deliveries as required. He could not take advantage of his own failures. Under these circumstances, THE COURT think the defense set up can not avail the defendant. He might have taken advantage of any failure by the plaintiff, and put an end to the contract, but he failed to do so. The order for two hundred hogs to be delivered on the 17th of November was complied with, so that when the defendant refused to receive any more hogs under the contract, the plaintiff was not in default, as the previous failure had been waived by subsequent orders. At this time, Schooley refused, as the agent of the defendant, to receive any more hogs, though it appears from the evidence, a large number were ready to be delivered, having been killed and cleaned. And the last order having been complied with, the plaintiff stands in the attitude of having performed his agreement as he had been required, and was ready to complete it if he had not been prevented by the refusal of the defendant. A tender of all the hogs was unnecessary, they being on hand, after the refusal of the defendant to receive any more.

If these facts are fully sustained by the evidence, it will be your duty to find for the plaintiff such damages as the law authorizes. The measure of the damages will be, the difference between the market value of the hogs at the time of the refusal to receive them, and the price which the defendant in his written contract agreed to pay.

The verdict was for the plaintiff. Judgment.